WILSON (PATRIOTIC BANK v.). See Case No. 10,810.

WILSON (PHILLIPS v.). See Case No. 11,109.

## Case No. 17,826.

### WILSON v. PIERCE.

[15 Law Rep. 137.]

District Court, N. D. California. March, 1852.

ADMIRALTY PROCEEDING—FOREIGN ATTACHMENT—NONRESIDENT DEFENDANT—JUDICIARY ACT.

1. The 11th section of the judiciary act of 1789 [1 Stat. 79] applies to the courts of the United States sitting in admiralty, as well as when sitting in equity and common law.

2. The libellant brought his libel in personam against the respondent, and joined other parties as trustees. Process of foreign attachment issued, according to the prayer of the libel, against the respondent and the supposed trustees. The marshal returned, as to the defendant, non est inventus, and that he had attached his goods, effects, and credits, in the hands of the trustees. The respondent, by his proctor, pleaded specially to the jurisdiction of the court, that the defendant was a citizen of another state, and then domiciliated therein, and was not found within that district at the time of serving the writ. Held, that it was a civil suit, against an inhabitant of the United States, commenced by original process, and, as such, within the prohibition of the 11th section of the judiciary act.

[Disapproved in Atkins v. Fibre Disintegrating Co., Case No. 600. Approved in s. c. Id. 602, but overruled in s. c. 18 Wall. (85 U. S.) 306. Disapproved in Cushing v. Laird, Case No. 3,508.]

3. The case of Clarke v. New Jersey Steam Nav. Co. [Case No. 2,859] considered.

[This was a libel by Allen T. Wilson against Henry A. Pierce.]

HOFFMAN, District Judge. This was a libel in the admiralty, founded on an alleged breach of a maritime contract. The libel, after setting out the cause of action, prays that process in due form of law, according to the course of this court in cases of admiralty and maritime jurisdiction in suits in personam, may issue against the said defendant, to compel him to appear and answer on oath, all and singular, the matters, &c.; and that the court will be pleased to decree that the said defendant pay to the said libellant his damages, and that the said libellant be satisfied out of the goods and chattels, lands and tenements, moneys and credits of said defendant in the hands of Upham & Post, (garnishees,) and for his costs and charges. Process of foreign attachment issued in accordance with the prayer of the libel, and the marshal returned that the defendant was not found, and that he had attached his credits and effects in the hands of the garnishees named. To this process the defendant, by his proctor, appeared under protest to the jurisdiction, and filed his exceptions to the libel, on the ground that the defendant is a citizen of another state, and now domiciliated therein.

It is not claimed that the defendant was an inhabitant of this district, or that he was found here at the time of serving the writ. The important question then to be determined, is: Can a process of foreign attachment legally issue in the admiralty against a citizen and inhabitant of the United States, in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ? The proceeding by way of foreign attachment, which in England rests only on the customs of London and Exeter, is demonstrated by the court in Manro v. Almeida, 10 Wheat. [23 U. S.] 473, to be a familiar and authorized method of exercising admiralty jurisdiction. It does not owe its origin to any local customs of England, but it is derived from the same sources as

those which furnish the other elements of admiralty powers. The authority, therefore, to attach the property of non-residents, which in court of common law results either from special custom or statutory provisions, (Com. Dig. "Attachment," B, D) in this court is derived from the usages and practice of courts of admiralty and civil law, which, as contradistinguished from those of courts of common law, regulate the modes of proceeding in the maritime tribunals of the United States. Act 1792.

The supreme court, in the case above cited, in deciding that the process of foreign attachment has the clearest sanction in the practice of the civil law, rely not only on the fact that it has been resorted to in one, at least, of the courts of the United States,—McGrath v. The Candalero [Case No. 8,809]; McGrath v. The Candalero [Id. 8,810]; Bouysson v. Miller [Id. 1,709]; Ryan v. The Cato [Id. 12,184],—but also on the explicit declaration of a work of respectable authority and remote origin, which has been universally recognised as among the best books on the practice of admiralty courts. In Clerke, Praxis Adm. (pt. 2, tit. 28), it is said: "If the defendant has concealed himself, or has absconded from the kingdom so that he cannot be arrested, if he have any goods, merchandise, ship, or vessel, on the sea or within the ebb and flow of the sea, and within the jurisdiction of the lord high admiral, a warrant is to be impetrated to this effect, viz: to attach such goods or ship of D., the defendant, in whose hands soever they may be, and to cite the said D. specially as the owner, and all others who claim any right or title to them, to be and appear on a certain day to answer unto P. in a civil and maritime cause."

By comparing the foregoing extract with the decision of which it forms the basis, it will be seen that the supreme court held that the process of foreign attachment might issue against the credits and effects of an absconding debtor who had fled beyond the jurisdiction, and against whom no means of redress remained unless by process of attachment. Such, in fact, were the allegations of the libel, and by the marshal's return it appears that the monition had been served by leaving a copy at the "late dwelling-house of Almeida, the defendant." The case of a similar process, against an "inhabitant" of the United States and a resident of another district, was not before the court. Dr. Brown, however, in his treatise on Civil and Admiralty Law, (volume 2, p. 434,) speaks of the easy and effective remedy (by process of foreign attachment), provided by the ancient practice of the admiralty court in cases where the person against whom a warrant has issued cannot be found, or lives in a foreign country. This proceeding, though not authorized according to Huberus, (Huberus de in Jus Vocando,) by the example of the civil law, he commends as salutary and effective; and though in latter times it has fallen into dis-

use in England, he laments the great mischief accruing to commerce from the want of it. Browne, Civ. & Adm. Law, ubi supra. If, then, the point to be decided were, whether the process of foreign attachment is in accordance with the principles, rules and usages of courts of admiralty, the case of Manro v. Almeida [supra], as well as those of Bouysson v. Miller [supra], and The Invincible [Case No. 7,054], would leave no room for doubt.

But it is urged that the prohibition contained in the 11th section of the judiciary act of 1789 presents an insuperable obstacle to the exercise of jurisdiction in the case under consideration. By that section it is provided that "No person shall be arrested in one district for trial in another, in any civil action, before a circuit or district court, and no civil suit shall be brought before either of said courts against an inhabitant of the United States, by any original process, in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ." It is not denied that the defendant in this case is an inhabitant of the United States, and that he is not an inhabitant of this district, nor is it asserted that he has been found within it at the time of serving the writ. If this proceeding had been instituted on the common law side of this court against a defendant similarly situated, there can be no doubt that the court would have been without jurisdiction. In the case of Picquet v. Swan [Case No. 11,134], it was concluded, after an elaborate investigation by Judge Story, that the process of foreign attachment, though in accordance with the local practice, could not issue from the circuit court against a defendant, unless he were in the one or the other predicament stated in the clause of the judiciary act above cited,— that is, unless he were either an inhabitant of the district or found within it, and this doctrine was affirmed by the supreme court in Toland v. Sprague, 12 Pet. [37 U. S.] 300.

If, then, the restriction contained in the judiciary act applies to civil suits at common law before the circuit courts of the United States, does the same prohibition apply to a civil suit before the district court in admiralty? It may be urged that the jurisdiction and modes of proceeding of the admiralty courts of the United States, rest exclusively on the grant in the constitution, and the rules furnished by the process act of 1789 and 1792; —that as, by those acts, the forms of proceeding are required to be according to the practice of the civil law and the rules and usages of courts of admiralty, and as the writ of foreign attachment is in accordance with such practice, rules and usages, the prohibition clause of the judiciary act has no application. But by the same process act (29th Sept. 1789), the forms of writs and modes of proceeding in the supreme courts of the states, respectively, were adopted into the judicial proceedings of the United States, on the com-

mon law side. And in the cases of Picquet v. Swan [supra] and Toland v. Sprague [supra] above cited, the very point adjudged was, that though the practice of the state courts authorized the proceeding by foreign attachment, yet that practice can have no effect where it contravenes the positive legislation of congress;—and that the state practice can be followed only where the court independently of it possesses jurisdiction; the process acts not having enlarged the jurisdiction, but only furnished rules for its exercise. The analogous provision, adopting in admiralty and maritime cases the practice of the civil law, must, it seems to me, receive a similar construction. If this reasoning be well founded, it follows that the process act, which prescribed the modes of proceeding in the admiralty cases, conferred no additional jurisdiction on the district courts, and that, if the prohibition contained in the judiciary act applies to courts sitting in admiralty cases, the prohibition was not removed, nor was the jurisdiction enlarged by the subsequent adoption of the civil law practice and that "of courts of admiralty."

Does, then, the prohibition alluded to embrace the district courts sitting as a circuit court of admiralty? At first sight, the language would seem to admit no other construction. The terms of the clause are: "No civil suit shall be brought before either of said courts, (the circuit and district courts,) against an inhabitant of the United States by any original process, in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ." In the case under consideration, the party sued is an inhabitant of the United States: the suit is confessedly in personam, for it is under the supposed sanction of the supreme court rules regulating actions in personam that the attachment issued. That the attachment is an original process is evident, not only from the fact that it can only issue, by the rules of the supreme court, as part of, and together with, process to be served upon each person, but also from the cases of Picquet v. Swan and Toland v. Sprague, where the process of foreign attachment to compel appearance was issued from the circuit court and was held to be illegal, and contrary to the prohibition contained in the section of the judiciary act under consideration.

But it is urged that, notwithstanding the language of the act, there is high authority to support the position that the process of foreign attachment can be resorted to in the admiralty to compel the appearance of nonresidents, whether found within the district or not; and the cases of Manro v. Almeida, before cited; Clarke v. New Jersey Steam Nav. Co. [Case No. 2,859]; Same v. Merchants' Bank, 6 How. [47 U. S.] 344, have been cited. The case of Bouysson v. Miller [supra], is also referred to. But the case of Manro v. Almeida does not necessarily determine the point now before the court. In that case, as

has been seen, the attachment issued against an absconding debtor, and the monition was returned served by leaving it at his "late dwelling-house." The court did not decide that, notwithstanding the 11th section of the judiciary act, an attachment could issue against an "inhabitant of the United States" who was not an "inhabitant" of the district where suit was brought, but who was domiciliated in another state, and who had not been personally served within the district. The object of the prohibition in question was, undoubtedly, to secure the inhabitants of the United States from suits in the United States courts, except in the districts they inhabited, or in which they might be found. It may well be that this exemption does not extend to the case of an absconding debtor who has fled from the district he inhabited, and from the United States, and against whom no other redress remained.

But the case of Clarke v. New Jersey Steam Nav. Co. affords a much stronger confirmation of doctrine contended for by the libellant, and has occasioned me the greatest perplexity and embarrassment. The point actually decided in that case was, that the district courts, as courts of admiralty, may award attachment against the property of foreign corporations found within their local jurisdiction, so as to compel the appearance of the corporation to answer the suit, or to subject the property attached to the final decree of the court. The whole argument turned upon an alleged distinction between the case of a private person and that of a corporation, and the court held that no such distinction existed. But it must be confessed the reasoning of the court proceeds upon the assumption, that process of attachment well lies in admiralty suit against the property of private persons whose property is found within the district, although their persons may not be found therein,—and the court observe, that ever since the case of Manro v. Almeida the question has been deemed entirely at rest. But it has been attempted to be shown that that decision does not necessarily extend to the case of an inhabitant of another district not found within the district where suit is brought; nor does Judge Story say in express terms that it covers such a case. The prohibitory clause in question does not seem to have been cited on the argument as presenting any obstacle to the jurisdiction, although certainly some decisions under it are cited in the opinion of the court. But the opinion of the court contains some expressions which, if taken without qualification, would seem decisive of the present question. "The jurisdiction of the admiralty," observes the learned judge, "may be executed not only against persons found within the district, but also by attachment against their property found within it, although their persons are not there. In each case where the court acts upon the property, it acts solely in rem. and it is at the option of the owner whether he will appear and allow the proceedings to go in personam or not."—"Unless

there be an appearance and a general defence, the decree of the court ultimately binds and acts in rem only upon the thing which is attached." Picquet v. Swan [Case No. 11,134]: That such is the effect of the decree, cannot be questioned; but the point for consideration is: Is the suit on that account a suit in rem, or rather does it cease to be "a civil suit brought against an inhabitant of the United States," within the meaning of the 11th section of the judiciary act?

The title of the suit is certainly in personam, for it names Henry A. Pierce as defendant. The supreme court rule, which is supposed to authorize this proceeding, is a rule prescribing the process in suits in personam, and by it the attachment can only issue as part of, or together with, process to be served upon the person. But if a proceeding by attachment, when the defendant does not appear and contest the suit, is to be treated like a proceeding in rem, and if, being such a proceeding, it is not within the clause prohibiting the bringing of any civil suit before the United States courts against an inhabitant of the United States, except in the district whereof he is an inhabitant, I have been unable to perceive why the same argument would not justify a proceeding by attachment in the circuit courts as well as in the admiralty; and yet in the former it has been adjudged to be illegal. See Toland v. Sprague, above cited. In all cases, if the defendant has never appeared and contested the suit, the proceeding is to be treated to all intents and purposes as a mere proceeding in rem, and not as personally binding on the party in possession. In Bissell v. Briggs, 9 Mass. 468, Chief Justice Parsons remarks: "If the goods, effects and credits attached are insufficient to satisfy the judgment, and the creditor should sue on that judgment in this state to obtain satisfaction. he must fail, because the defendant was not personally amenable to the jurisdiction of the court rendering the judgment." In Kilburn v. Woodworth, 5 Johns. 37, it was held that no suit could be maintained in New York, on a judgment obtained by default in Massachusetts, in a suit by attachment against a defendant domiciliated in New York. In Story, Confl. Laws, § 559, the same doctrine is laid down, nor is it necessary to cite further authorities to the point. If, then, it is urged that the decree in attachment suits in cases of default acts in the admiralty only in rem, and therefore is not within the prohibition of the 11th section, why is the judgment of the circuit court in a similar case, which it appears has only the same effect, any more within its operation? And yet that it is so has been, as we have seen, expressly decided. In Toland v. Sprague, 12 Pet. [37 U. S.] 330, the court say: "The right to attach property to compel the appearance of persons, can properly be used only in cases in which such persons are amenable to process in personam." If this observation applies to suits in admiralty,—and I am unable to see why it does

not,—it would seem decisive of this case. It is not pretended that the defendant here is personally amenable to the jurisdiction. The court adds, "That even in case of a person being amenable to process in personam, an attachment against his property cannot be issued against him, except as part of, or together with, process to be served upon his person."

It is precisely in this form, and in accordance with this principle, that the supreme court rule directs process of attachment to be issued in the admiralty. It seems hardly supposable that process against the person should be required to precede or accompany the attachment, had the supreme court contemplated the issuing of an attachment in cases where the writ against the person would necessarily be a mere nullity. The more reasonable supposition would rather seem to be, that it was intended to restrict the issuing of attachments to the cases where, in the language of the court above cited, "the persons are amenable to the jurisdiction." If the clause in the 11th section has any application whatsoever to the district courts sitting in admiralty, it must, I think, be conceded that the person in this case was not so amenable.

The decision actually made in the case of Clarke v. New Jersey Steam Nav. Co. may perhaps be supported on grounds consistent with the view taken of the case before this court. Judge Story, as has been seen, held that an attachment might issue in the admiralty against the goods of a foreign corporation. It may be that the case of a corporation is not within the prohibition of the judiciary act. There is certainly some difficulty in affirming a corporation, as such, to be an "inhabitant" of any district, Flanders v. Aetna Ins. Co. [Case No. 4,852]; Hope Ins. Co. v. Boardman, 5 Cranch [9 U. S.] 57; [Commercial & Railroad Bank of Vicksburg v. Slocomb] 14 Pet. [39 U. S.] 60; [Runyan v. The Lessee of John G. Coster] Id. 122; [Irvine v. Lumberman's Bank] Id. 293; and some considerations may be urged to an attachment against the goods of a foreign corporation not applicable to a similar process against the goods of an individual. The proper process against corporations aggregate was, at common law, by distringas. Bac. Abr. "Corporations," E. 2. And if they have neither lands nor goods, it seems there is no way to make them appear, either in a court of law or equity. Thusfeild v. Jones, Skin. 27; 1 Vent. 367. The process of distringas is closely analogous to that of foreign attachment. [McCormick v. Sullivant] 10 Wheat. [23 U. S.] 196. And it may be that on these considerations an admiralty attachment may issue against the goods of a foreign corporation, even where the same process could not be allowed against the goods of a non-inhabitant not found. With regard to the case of New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. [47 U. S.] 350, it is enough to say, that the exception to the jurisdiction, on the grounds we are now con-

sidering, was not taken, and the authorities are clear that the privilege is personal, and is waived by a general appearance. Pollard v. Dwight, 4 Cranch [8 U. S.] 421; Knox v. Summers, 3 Cranch [7 U. S.] 496; [Logan v. Patrick] 5 Cranch [9 U. S.] 288; Harrison v. Rowan [Case No. 6,140]; [Gracie v. Talmer] 8 Wheat. [21 U. S.] 699. In the case of Bouysson v. Miller [supra], the objection we are considering was not taken nor passed upon by the court.

The only decision which I have been able to find directly bearing on the principal question before the court, is Ex parte Graham [Case No. 5,657]. In that case the question arose, whether the provisions of the 11th section applied to the district courts as courts of admiralty in prize cases; and it was held, by Mr. J. Washington, that they did. It was urged that the restraints contained in that section were incompatible with the essential jurisdiction of an admiralty court, more especially in prize causes; and a distinction was attempted to be drawn between the courts of common law and equity and the admiralty jurisdiction in prize causes. But the court repudiated the doctrine, and declared, "that it is confidently believed that such a distinction is unauthorized by the laws of the United States." "The jurisdiction of these courts," says Mr. J. Washington, " in prize causes is limited as to persons, by the express provisions of the 11th section of the judiciary act before referred to. Prize proceedings against an inhabitant of the United States is unquestionably a civil suit, and, if it be against the person instead of the thing, the jurisdiction is excluded, unless it be instituted in the court of the district whereof he is an inhabitant, or is found at the time of serving process. The manifest policy of the judicial system of the United States was to render the administration of justice as little oppressive to suitors as possible, and corresponds entirely with the construction which confines the process of the courts within the limits of the district in which the court sits, and from which it issued."

The case from which the above citations are taken undoubtedly differs from the one under consideration. But the opinion of the court sufficiently establishes the important points that the provisions of the 11th section apply to the district courts sitting in admiralty, and that the limitation is not removed nor the jurisdiction enlarged by the process acts. If these doctrines are correct, it seems to me the present case is disposed of. It may further be observed, that the prohibition in question is by the act extended to all civil cases before either of said courts. If the admiralty jurisdiction of the district court be excluded from its operation, the only cases cognisable by the district courts to which it can apply, are suits against foreign consuls, and where an alien sues for a tort only in violation of the laws of nations or of a treaty of the United States;—cases

which, from their own nature as well as their unfrequent occurrence, would hardly seem to call for so express and solicitous a restriction of the jurisdiction of the court.

It may be contended that by the second supreme court rule the foreign attachment is expressly allowed as mesne process to be used in suits in personam, and that, inasmuch as these rules were prescribed by the court in virtue of acts of congress, they are to be regarded not only as of the highest authority, but as legislative enactments intercepting and repealing the 11th section of the judiciary act. But if any inference is to be drawn from the general language of the rule, it would rather seem to be, that the supreme court did not contemplate the issuing of an attachment in any case against a non-inhabitant, for it is required to be accompanied in all cases by a warrant of arrest,—which, against a person not an inhabitant, and not alleged to be within the district, would be an idle formality. The object of the rules was, to prescribe rules of practice in the admiralty courts of the United States, not to enlarge their jurisdiction; and unless the language of the rules admits no other construction, or its provisions no other application, it should not be deemed to have repealed an important provision of the fundamental and original act under which the courts of the United States went into operation. By the twenty-third rule of the supreme court, it is required that the libel, if in rem, should state the property to be within the district, and if in personam, the names, places of residence and occupation of the parties. If the first allegation in suits in rem is necessary to show that the court has jurisdiction, (except perhaps in prize cases,) the last allegation would seem to be required for the same purpose, and may not unreasonably be supposed to have been required that the court might see on the face of the libel that the case was not within the prohibition of the judiciary act.

It is urged, however, that the practice of issuing foreign attachments, in cases like the present, obtains in all the admiralty courts of the United States, and, therefore, must have a solid foundation in law. Whether such be the universal practice, I am ignorant. I have attempted to investigate its legal foundation, and after great consideration, have been unable to take the case out of the clause in question. But if the practice be as is represented, it must excite some surprise that neither in the elementary writers nor in the rules of court, so far as I have discovered, is any mode of proceeding indicated by which, in the case of non-residents, the opportunity of appearing is secured to the defendant. In all statutory provisions regulating proceedings by attachment, some time is always allowed for actual or constructive notice; and by the custom of London, it seems four successive defaults were first incurred, and then the plaintiff only obtained.

execution for the money in the hands of the garnishee, on finding pledges to return it if the defendant, within a year and a day, disprove the original debt. Com. Dig. "Attachments," A. But in this case the proceeding contemplated is to go on to decree upon default therein, after the time usual when the defendant is personally served, (ten days,) and to have satisfaction thereof forthwith out of the moneys attached. Such a proceeding would be virtually ex parte, and, it seems to me, would never be allowed in a court of justice. It is urged, however, that the evil is, or might be as great, in all suits in rem. But suits in rem are instituted in only a limited number of cases, and are to enforce a charge on the specific thing seized. The presumption of the law is, that the party in possession of it for the owners, has the means, as well as interest, to defend it from all claims brought against it specifically, and the rules of the admiralty recognise the master as a proper party to appear and defend the suit. The claims brought to be enforced in rem, are, in almost all cases, the obligations created or liabilities incurred by the master, and if personal notice is to be served on any one, it should be on him; and this is effectually done by seizing his ship. But on other accounts the master is, in suits in rem, the proper party to be notified. By the maritime law he is regarded not so much as the agent or mandatory of the owners, as the administrator of the property, that is, the vessel, intrusted to his care and management. He acts for the owners rather in the character of a gerant or active partner of a société en commandité, or limited partnership, than as their agent. The Phœbe [Case No. 11,064], and authorities cited. Occupying this relation, there is, therefore, a theoretical propriety, as well as no practical danger, in treating a notice to him in suits in rem as sufficient.

But the case of a foreign attachment is wholly different. The bailee in whose hands the goods are attached, has not the information necessary to enable him, nor the motives to induce him, to defend an action against the bailor, having no reference to the subject of the bailment, except that the goods are attached. Still less has a debtor, where the debt is attached in a suit by a third person against his creditor, any motive to do more than appear in the court and apply the money due from him according to its decree. I think, therefore, that the practice in suits in rem cannot be invoked to authorize the mode of proceeding contemplated in suits commenced by attachment, and have arrived at the following conclusions:—1st. That, on principle and authority, the 11th section of the judiciary act must be deemed to apply to the United States courts sitting in admiralty, as well as in equity and at common law. 2d. That this is a civil suit against an inhabitant of the United States, commenced by original process. 3d. That, as such, it is within the prohibition of the act.

I have considered the questions involved in this case with the care and attention demanded by its importance, and due to the great name of the illustrious judge, some of whose observations I have felt obliged to receive with some qualifications. If there be any statutory provisions or adjudged cases which I have not noticed, my attention has not been called to them. In differing from a casual observation of Judge Story, I may well feel some distrust of the accuracy of my own conclusions. If I have been led into error, I can only regret that the means of correcting it are not more easy and expeditious.